IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**DOUGLAS D. RAGSDALE**                                                               **PLAINTIFF**

**V.**                                                                         **NO: 3:19-CV-254-M-V**

**MISSISSPPI STATE et al.**                                                    **DEFENDANT**

## ORDER

This cause comes before the Court on Defendant, Gage Vance's ("Vance"), Motion to Dismiss for lack of subject matter jurisdiction under the doctrine of sovereign immunity and under Rule 12(b)(1). The Court has reviewed Vance's motion, memorandums, and supplemental brief as well as Plaintiff, Douglas Ragsdale's ("Ragsdale") response and is prepared to rule.

## FACTUAL BACKGROUND

On November 12, 2019 Ragsdale commenced an action by filing a complaint under 42 U.S.C. § 1983 ("Civil Action for Deprivation of Rights") against the State of Mississippi ("Mississippi"), Assistant District Attorney Mickey Mallette ("Mallette"), Lafayette County Narcotics Agent Vance, and Lafayette County, Mississippi ("Lafayette"). In his complaint, Ragsdale alleges that on September 20, 2016 the Lafayette County Narcotics Unit and the Lafayette County Sheriff entered and searched a Como, Mississippi home that he and several others were in without a valid warrant [*See* 1]. After the search, Ragsdale and another, Detrone Ragsdale, were arrested and taken to the Lafayette County Detention Center [*See* 1]. Ragsdale further alleges that five months passed before he was arraigned [*See* 1]. In those five months, Ragsdale states that Vance applied for and was granted two additional warrants without probable

cause [*See* 1]. It is unclear to the Court what type of warrants were issued, as Ragsdale referred to them as "body warrants" and the defendants were silent on the issue. After the indictment and arraignment in February 2017, Ragsdale requested discovery from the State, and was not given it [*See* 1]. Then, suddenly on October 4, 2019, the case against Ragsdale was dismissed [*See* 1]. Ragsdale asserts that these allegations give rise to causes of action pursuant to Section 1983 for illegal search and seizure, false arrest/imprisonment, indictment without probable cause, malicious prosecution, and (though he does not use the precise phrase) abuse of process.

Since the commencement of this action by Ragsdale, Mississippi and Mallette filed a Motion to Dismiss [10]. An order granting dismissal in the cases against Mississippi and Mallette was entered on September 24, 2020 citing the Eleventh Amendment protections on the basis of sovereign immunity and prosecutorial immunity, respectively [31].

## STANDARD OF REVIEW

A Rule 12(b)(1) motion allows a party to challenge the Court's subject matter jurisdiction over a case. "[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Hays v. LaForge*, 113 F.Supp.3d 883, 889 (N.D. Miss. 2015) (internal quotations and citations omitted). The Fifth Circuit stated:

> A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. In considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. Thus, under Rule 12(b)(1), the district court can resolve disputed issues of fact to the extent necessary to determine jurisdiction[.]

*Id*. at 889-90 (citing *Smith v. Reg'l Transit Auth*., 756 F.3d 340, 347 (5th Cir. 2014)). More specifically, the Fifth Circuit has clarified that in ruling on a Rule 12(b)(1) motion, a district court "may rely on the (1) complaint alone, presuming allegations to be true; (2) the complaint

2

supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and by the Court's resolution of disputed facts." *Hays* at 890 (citing *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009)). Because sovereign immunity limits the jurisdiction of the federal courts, an action that is barred by sovereign immunity should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Qualified immunity is a viable defense unless the existence of a constitutional violation is "beyond debate." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). When qualified immunity is claimed, the burden is on the plaintiff to show it is not applicable. *See e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## ARGUMENT

Ragsdale filed a Complaint against Vance, among others, claiming monetary relief in the amount of $5,400,000.00 for unlawful trespass, imprisonment, and malicious acts under 42 U.S.C. § 1983. More specifically, Ragsdale asserts that Vance violated his constitutional rights by trespassing on his property without a warrant (illegal search and seizure), arresting and indicting him without probable cause (false arrest and imprisonment), prosecuting him with malice (malicious prosecution), denying him full discovery, and threatening him with more severe prosecuting if he would not accept a plea deal (abuse of process) [*See* 1 at. p. 3].

In his Motion to Dismiss, Vance states that he is not subject to Ragsdale's claims because he is protected under the doctrine of sovereign immunity. Vance states that in his capacity as a Lafayette County Metro Narcotics Unit Investigator he and other officers entered the residence pursuant to an executed search warrant issued on September 20, 2016 [38 at p. 2, Ex. A]. This search warrant was executed by a judge and issued based on an affidavit in support of the warrant signed by Vance on September 20, 2016 [*See* 38 at p. 2, Ex. B]. Vance's affidavit states probable

cause for the search because he and other agents were sent to the residence at 32 CR 522, Como, Mississippi to investigate complaints made to the Lafayette County Sheriffs Department about marijuana being grown inside the residence and sold from the residence. When the officers arrived to the location, there was a marijuana plant in plain view outside of the residence in the driveway. Vance also noted that there was a strong smell of raw marijuana coming from the bedroom [*See* 38 at Ex. C].

Ragsdale's response [39] to Vance's Brief in support of his Motion to Dismiss calls into question the validity of Vance's search warrant. Namely, Ragsdale questions how probable cause was established for a search warrant when the supporting facts of the potted plant observed in the driveway and the odor emanating from a bedroom were the only factors observed once the officer arrived at the residence presumably with the search warrant in hand. Ragsdale puts forth other objections such as there is no physical evidence of the potted plant, there is no evidence of the "alleged" complaints to the Sherriff's office, and the timing of the travel to the residence is inaccurate [*See generally* 39]. However, the facts supporting the sworn affidavit must be taken at face value. If the Court finds Ragsdale's claim of an invalid search warrant credible, and it finds the search of the residence to be unconstitutional, Vance's protection under sovereign immunity would be nullified.

To determine whether Vance is protected under sovereign immunity we must first determine whether he acted in violation of Ragsdale's civil rights. When evaluating a qualified immunity defense, the Court conducts a "well-known" two-prong inquiry. *See Bazan ex. Rel. Bazan v. Hidalgo City*, 246 F.3d 481, 490 (5th Cir. 2001). "The first step is to determine whether plaintiff alleged a violation of a clearly established constitutional right… The second step requires determining whether…the official's conduct was *objectively* reasonable under clearly established

4

law existing *at the time of incident*." *Id*. (citations omitted). "[T]o overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show 'that the right was clearly established . . . in light of the specific context of the case.'" *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Whether an officer violated an individual's Constitutional right is a threshold inquiry into whether an officer is entitled to immunity. *See Starks v. Keys*, 2016 U.S. Dist. LEXIS 40226, 22-23 (N.D. Miss, Mar 28, 2016). District Courts are charged to "consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers . . . were reasonable under the circumstances." *Id.*

Using the Fifth Circuit's established law, the Court will examine each of Ragsdale's claims in turn and as they relate to one another to determine whether Vance's actions constitute a violation of Ragsdale's civil rights. The issue of whether a constitutional right exists in this case is not an issue in dispute. Therefore, the main focus is whether, given the facts and circumstances of this case, Vance's actions were reasonable and justified.

### *Search and Seizure*

It is generally known that law enforcement may not enter a private dwelling place without legal authorization to do so. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons … against unreasonable … seizures.'" *Manuel v. City of Joliet, Ill*., 137 S.CT. 911, 917 (2017). "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013) (citing *Dunaway v. New York*, 442 U.S. 200, 213 (1979) (internal citations omitted). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person

to conclude that the suspect had committed or was committing an offense." *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006) (citations omitted). Therefore, we turn our focus to whether probable cause was established to allow the search of the premises at 32 CR 522, Como, Mississippi on September 20, 2016 that led to the seizure of items from the house and the arrest of Ragsdale.

We understand Vance, in his role as a narcotics investigator for the Lafayette County Metro Narcotics Unit, was directed to a residence where it was suspected marijuana was being grown and sold after the Lafayette County Sheriff's Department received numerous complaints on September 19, 2016 and September 20, 2016 stating the same. "The complainant advised the alleged marijuana was being grown and sold by Detrone Ragsdale and Doug Ragsdale, both occupants at the address." [38 at. Ex. C]. The language of the Affidavit in support of the Search Warrant states that Vance had "good reason to believe and do [sic] believe that certain things hereafter described as now being concealed in or about … 32 C.R. 522, Como, MS 38666." [38, Ex. B]. Upon arrival to the residence Vance observed a potted marijuana plant in the driveway. At section 4 the Affidavit references the attached sheet, "Underlying Facts and Circumstances." The "Underlying Facts and Circumstances" related that there was a marijuana plant in the driveway of the residence and a strong odor of raw marijuana coming from the bedroom area. [*See* 38, Ex. C]. On September 20, 2016, a valid search warrant was issued for the residence and Vance, with others, entered the residence.

Ragsdale puts forth the argument that the search warrant is not valid because the judge who signed the warrant could not have relied upon probable cause established by the plain view marijuana plant or raw marijuana odor in the bedroom. Ragsdale presumes the only facts that the judge had knowledge of when signing the search warrant were the complaints submitted to the

6

Sheriff's office about the growing and selling of marijuana at 32 C.R. 522, Como, Mississippi. Unfortunately, Vance does not provide enough factual specificity in his pleading to establish the timing of the execution of the search warrant with regard to his identification of the potted marijuana and the raw marijuana odor. Nevertheless, the Court finds these details are not necessary to find a valid search in this instance.[1]

Given the facts as presented to the Court, we presume, "worst case" scenario, that a search warrant was executed by the judge and issued based solely on the multiple complaints that marijuana was being grown at 32 C.R. 522, Como, Mississippi, ONLY, and that the later facts of the marijuana plant in the driveway and the raw marijuana odor emanating from the bedroom served as further support for probable cause for the search, seizure, and later arrest of Ragsdale. We believe this "worst-case" fact scenario is enough to support Vance's ability to search the residence. "[E]vidence obtained by officers in objectively reasonable, good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Leon*, 468 U.S. 897, 922-23 (1984). "[A] police officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a 'bare bones affidavit'" *United States v. Fields*, 182 F. Supp. 2d 575, 578 (E.D. Tex. 2002) (citing *United States v. Cisneros,* 112 F.3d at 1272, 1278 (5th Cir. 1997)). "An affidavit is 'bare bones' if it is so deficient in demonstrating probable cause that it renders an officer's belief in the existence of probable cause completely unreasonable." *Cisneros,* 112 F.3d at 1278.

> 'Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to a warrant.' Nonetheless, the officers' good faith cannot be established, for example, when a

---

[1] Had Vance provided the Court with the details of securing the search warrant in response to Ragsdale's allegations, the Court would need not speculate on the timing of the events that led to Vance's determination of probable cause.

7

warrant is 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*United States v. Shugart,* 117 F.3d 838, 844 (1997).

Indicia of probable cause includes information that has been corroborated by independent investigation or contemporary observations of police. *See United States v. Pena–Rodriguez,* 110 F.3d 1120, 1130–31 (1997).

In this case, Vance sought a search warrant based on complaints from unnamed informant(s). According to Vance's Affidavit, the informant(s) supplied detailed information about marijuana being grown and sold by Detrone and Doug Ragsdale, occupants at the address [*See* 38 at Ex. 3]. Once he arrived at the address, Vance saw in plain view a marijuana plant being grown in a driveway pot. Given the details in the affidavit for the search warrant and the marijuana evidence in plain view, the Court finds that Vance acted in good-faith in determining probable cause for the search of the residence existed because of the totality of the circumstances.

> This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.' *Brinegar v. United States,* 338 U.S. 160, 176 (1949). 'In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Id.,* at 175.

*Illinois v. Gates*, 462 U.S. 213, 230–31 (1983).

Once inside, the marijuana odor further substantiated probable cause for the search and seizure of the criminal contraband. The Court finds that Vance, in good faith, relied on a validly executed search warrant, as well as relied on his observations, to reasonably conclude that there were illegal drugs present in the home. Furthermore, the Court also recognizes "that affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements

8

of elaborate specificity once exacted under common law pleading have no proper place in this area.'" *United States v. Ventresca,* 380 U.S. 102, 108 (1965).

In *Pena-Rodriguez*, Plaintiff filed a motion to suppress evidence that was gathered during an alleged illegal search. More specifically, Plaintiff claimed that the search warrant contained stale facts and, therefore, did not establish probable cause for the search. The Court considered both the information provided by the affiant and the contemporary, corroborative evidence gathered by the government to determine that the information was sufficient for a reasonable officer to believe that the challenged warrant was based on probable cause. Thus, the good-faith exception applied. *See United States v. Pena-Rodriguez,* 110 F.3d 1120 (5th Cir. 1997). With similar facts in this case, we too, find that given the totality of the circumstances, that the good-faith exception applies and Vance was justified in determining there was probable cause for the search of 32 C.R. 522, Como, Mississippi and seizure of drug items inside.

### *False Arrest and Imprisonment*

Ragsdale argues that his constitutional rights were violated when he was arrested and taken into custody without probable cause. "[T]here is now broad consensus among the circuits that the Fourth Amendment right to be free from seizure but upon probable cause extends through the pretrial period." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917, (2017) (citations omitted).

"[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) (overruled on other grounds). This is so even if it is determined the officer acted with malice. *See Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). The independent-intermediary doctrine is not absolute though. "[T]he chain of causation is broken only where all the facts are presented to the grand

9

jury, [or other independent intermediary, and] where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary [sic]." *Id.* at 1428. In other words, the chain of causation will not be broken, and the officer can be held liable, if the affidavit was so lacking in probable cause that belief in the existence of probable cause is unreasonable, or if the officer was deliberate and reckless in making misrepresentations in the affidavit. *See Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020). Using the totality of the circumstances analysis above, we conclude that probable cause also supports the arrest of Ragsdale,[2] and neither of these exceptions is present in our case. The Fifth Circuit has applied the independent-intermediary doctrine even if the intermediary's action occurred after arrest and even if the arrestee was never convicted of any crime. *See Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). In this case the judge who issued the search warrant and the grand jury who decided to indict Ragsdale both qualify as independent intermediaries whose actions broke the chain of causation to Vance.

Ragsdale also claimed Vance "conspired" with the prosecutor to procure the indictment. However, this conclusory allegation is not supported by any facts that lead to an inference of grand jury taint. *See Shaw v. Villanueva*, 918 F. 3d 414, 418 (5th Cir. 2019) (plaintiff's allegations were "all broth and no beans" and did not overcome independent-intermediary doctrine because he pleaded no specific facts showing defendants misdirected judge into issuing arrest warrant). Ultimately, any false arrest/imprisonment claims against Vance should be dismissed.

As an additional claim, Ragsdale asserts that he was unlawfully detained (without probable cause) based on the period of custody following the issuance of arrest warrants and/or indictment.[3]

---

[2] The Court notes here that the common law rule of search incident could also apply to validate the search.
[3] Fourth Amendment claims for detention pursuant to the "wrongful institution of legal process" are more akin to malicious prosecution than false arrest claims and accrue when criminal proceedings end in a plaintiff's favor. *See Winfrey v. Rogers,* 901 F.3d 483, 493 (5th Cir. 2018).

10

This claim also fails as against Vance because Plaintiff did not allege facts that would overcome the application of the independent-intermediary doctrine.

Finally, with respect to any claim by Ragsdale that he did not receive a prompt hearing[4] after his warrantless arrest, Vance is not implicated. Here, like above, Ragsdale does not allege any facts that support an inference that Vance had any personal involvement in or personal knowledge of the alleged denial of a prompt post-arrest hearing or at any stage of prosecution. Even if Ragsdale had named a proper defendant, this claim is likely time barred. *See Johnson v. Cty. of Paulding*, 780 F. App'x 796, 799 (11th Cir. 2019) (*per curiam*) (finding it should have been apparent to plaintiff two days after his arrest that he potentially had a claim and his claim raised outside the two-year statute of limitations was barred).

### *Malicious Prosecution and Abuse of Process*

To the extent Ragsdale alleges Vance violated his constitutional rights and is liable under Section 1983 for malicious prosecution and/or abuse of process, such claims are not independently cognizable. Precedent from the Fifth Circuit Court of Appeals directs that there is no freestanding, federal, constitutional right to be free from malicious prosecution or abuse of process. *See, e.g., Cevallos v. Silva*, 541 F. App'x 390, 394 ("[The Fifth Circuit] has rejected a freestanding right to be free from malicious prosecution or abuse of process."). Rather, the plaintiff must allege that officials violated specific constitutional rights in connection with a malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (*en banc*). In this case, the Court has determined that no constitutional rights have been violated. Accordingly, any federal malicious prosecution or abuse of process claims asserted by Ragsdale fail as a matter of law.

### **CONCLUSION**

---

[4] Mr. Ragsdale alleges five months passed before his arraignment and that he did not receive a "preliminary hearing." [1 at 3, item 2].

The Court finds that Defendant, Gage Vance did not violate Doug Ragsdale's civil rights under 32 U.S.C. § 1983 and, therefore, Vance is protected from prosecution under the doctrine of sovereign immunity and as such the Court does not have subject jurisdiction over the claim. The Defendant's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) [20] is **GRANTED**.

ORDERED this 15th day of March 2021.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**